UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILAL SUHAIL and AMNA BILAL,

    Plaintiffs,

v.

U.S. ATTORNEY GENERAL, *et al.*

    Defendants.
_____/

Case No. 15-cv-12595

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [12]**

**I. INTRODUCTION**

Plaintiffs Bilal Suhail ("Suhail") and Amna Bilal ("Bilal") (collectively "Plaintiffs"), bring this action to challenge U.S. Citizenship and Immigration Services' (USCIS) denial of a Form I-130 immigrant visa petition that Suhail filed on behalf of his wife, Bilal, seeking to have her designated as an immediate relative. *See* Dkt. No. 1. Defendants have filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court lacks jurisdiction over Plaintiffs' claims and that the Complaint failed to state a claim on which relief can be granted. *See* Dkt. No. 12. For the reasons discussed herein, the Court will **GRANT** Defendants' Motion to Dismiss [12]. The Court's Opinion and Order is set forth in detail below.

## II. BACKGROUND

On September 21, 2005, Suhail, a U.S. citizen, was convicted by a Michigan Circuit Court of Assault with Intent to Commit Criminal Sexual Penetration (felony) in violation of Michigan Penal Code § 750.520g(1), MICH. COMP. LAWS § 750.520g(1).[1] Dkt. No. 12-2, p 6 (Pg. ID No. 143).[2] The victim was a child under the age of 13. *See id*. Suhail was sentenced to nine months in jail and five years of probation, as well as being required to register as a sex offender.[3] *See id*. at 8 (Pg. ID No. 145).

Suhail married Bilal, a citizen of Pakistan, on December 19, 2010.[4] Dkt. No. 1, p. 17, ¶¶ 29–30 (Pg. ID No. 17). Shortly thereafter, on March 30, 2011, Suhail filed for a I-130 immigration visa petition for Bilal. *See id*. at 17, ¶ 31. This first petition was denied on January 23, 2012, based on USCIS's construction of the Adam Walsh Act (AWA), which bars sex offenders from having a family-based visa petition granted unless the offender poses no risk to the intended beneficiary. *See id*. In April 2012, Suhail filed a second petition for Bilal, which was denied on July 22, 2013 for the same reason as the first petition. *See id*. at 17, ¶ 33. Suhail

---

[1] Four counts of second-degree criminal sexual conduct with a person under the age of 13, MICH. COMP. LAWS § 750.520c(c)(1)(a), were dismissed after Suhail pleaded no contest to Assault with Intent to Commit Criminal Sexual Penetration, MICH. COMP. LAWS § 750.520g(1). *See* Dkt. No. 12-2, p. 8 (Page ID No. 145).

[2] "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (citations omitted). Here, Suhail's criminal case dispositions are part of the administrative record upon which USCIS based its decision of denial, and accordingly, will be considered. *See* Dkt. No. 12, p. 15 (Pg. ID. No. 112), *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so …. [o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.").

[3] Additionally, Suhail's sentencing disposition advises that he should have "[n]o contact with children under 16 years" and receive sex offender treatment. *See* Dkt. No. 12-2, p. 8 (Page ID No. 145).

[4] Plaintiffs note in their Complaint and Response that they are currently expecting their first child. Dkt. No. 1, p. 46–47, n.7 (Pg. ID NO. 46–47) ("To the extent there is any concern over the safety of the child, which there is none, application of the Adam Walsh Act would actually leave the child more vulnerable because the child's mother cannot immigrate to the U.S. even though she is in no danger from her husband.")

appealed the denial to the Board of Immigration Appeals (BIA), which denied his appeal on January 9, 2015. *See id.* at 18, ¶ 33 (Pg. ID No. 18). The BIA determined that it lacked jurisdiction to review USCIS' decision. *Id.* On July 23, 2015, Plaintiffs filed the present action in federal court. *See* Dkt. No. 1.

### III. LEGAL STANDARD

Defendants bring their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(b)(1), (6); Dkt. No. 12, p. 2 (Pg. ID No. 99). Dismissal is appropriate under Rule 12(b)(1) where the court lacks subject matter jurisdiction over a plaintiff's claim. FED. R. CIV. P. 12(b)(1). In reviewing a Rule 12(b)(1) motion, the court must accept all material allegations as true and construe them in a light most favorable to the non-moving party. *Id.* Courts should review 12(b)(1) challenges before others. *See Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 450 (6th Cir. 1988).

Dismissal is appropriate pursuant to Rule 12(b)(6) where a plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under Rule 12(b)(6), dismissal is appropriate where a plaintiff cannot establish any set of facts that would entitle him or her to the relief sought. *See Conley v. Gibson,* 355 U.S. 41, 45 (1957). In ruling on a Rule 12(b)(6) motion, a court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).

Here, because the Government contends that this Court lacks subject matter jurisdiction, the Court will initially consider the request for relief under Rule 12(b)(1). *See Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (quoting *Bell v. Hood,* 327 U.S. 678, 682 (1946) for the proposition that when a defendant moves for a motion to dismiss under

both Rule 12(b)(1) and (b)(6), the court should consider the 12(b)(1) motion first because "the 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."). However, because Plaintiffs also make additional arguments in the Complaint regarding the constitutionality and procedures involved in USCIS' statutory interpretation, the Court will also consider the request for relief under Rule 12(b)(6).

## IV. DISCUSSION

USCIS denied Suhail's I-130 petition based on provisions of the AWA, which amended the Immigration and Nationality Act (INA). The INA generally allows a United States citizen to classify his or her foreign national spouse as an immediate relative for the purpose of allowing the person to immigrate to the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i). The AWA amended the INA to prohibit a United States citizen who has been convicted of any "specified offense against a minor" from filing a family-based visa petition on behalf of a beneficiary "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien." See 8 U.S.C. § 1154(a)(1)(A)(viii).

USCIS found that Suhail's 2005 conviction constituted a "specified offense against a minor" and that he was therefore "ineligible to act as petitioner on a family-based visa petition." Dkt. No. 1-2, p. 3 (Pg. ID No. 62). In order to overcome the presumption of ineligibility, Suhail, as the petitioner, bore the burden of proving beyond any reasonable doubt that he did not pose a risk to the safety or well-being of the beneficiary. *See id*. at 5 (Pg. ID No. 64). USCIS concluded that Suhail had not sufficiently demonstrated that he posed no risk to the beneficiary. *See id*.

Plaintiffs sued the U.S. Attorney General, Director of USCIS, and Secretary of Homeland Security, alleging:

(1) USCIS erred as a matter of law in determining that Mr. Suhail's 2005 conviction qualifies as a "specified offense against a minor," and thus is

subject to the statute's conviction clause, barring him from filing an immediate relative visa petition on behalf of his spouse under 8 U.S.C. § 1154(a)(1)(A)(viii);

(2) USCIS erred in denying the Plaintiffs' I-130 Petition under 8 U.S.C. § 1154(a)(I)(A)(viii), because Mr. Suhail's conviction occurred before the effective date of the Adam Walsh Act and applying the law's INA amendments to such a preenactment conviction would produce an impermissible retroactive effect;

(3) USCIS erred in denying the Plaintiffs' I-130 Petition because it acted in excess of its delegated authority in interpreting and applying the "no risk" clause, and thus its implementation of the INA's Adam Walsh Act amendments is *ultra vires* to the statute; and

(4) the administrative scheme under which USCIS has implemented the Adam Walsh Act amendments to the INA, as applied to deny the Plaintiffs' I-130 Petition, arbitrarily interferes with Mr. Suhail's constitutionally protected liberty interest in marriage and family life - in particular, his right to live together with his wife in the United States.

Dkt. No. 1, pp. 9–10, ¶ 15 (Pg. ID. No. 9–10). Plaintiffs claim that they are not seeking review of USCIS' discretionary "no risk" determination in this particular case, which the Court is prohibited from reviewing. *See id*.; 8 U.S.C. § 1252(a)(2)(B)(ii) ("no court shall have jurisdiction to review … (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security").

Defendants' Motion to Dismiss asserts that Plaintiffs' third and fourth challenges are precluded from judicial review because they arise out of USCIS' discretionary risk determination. Dkt. No. 12, p. 21 (Pg. ID No. 118). Additionally, Defendants argue that none of Plaintiffs' challenges state a viable legal claim for relief, and thus, their Complaint cannot survive dismissal. *Id*.

    **A.**        **Applicability of 8 U.S.C. § 1252(a)(2)(B)(ii) to Plaintiffs' Challenges**

Defendants first contend that, to the extent that Plaintiffs are seeking to challenge USCIS' discretionary application of the "no risk" provision to Suhail's petition on Bilal's behalf, those claims are precluded because the INA only allows for such challenges in the context of a petition for review filed with a court of appeals. *See id*. at 23 (Pg. ID No. 120); 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* in accordance with this section.") (emphasis added).

Indeed, several similar cases regarding challenges to AWA-based visa petition denials have been dismissed based on district courts' readings of section 1252(a)(2)(B)(ii). *See Bittinger v. Johnson*, No. 1:14-cv-1560, 2015 WL 3842649 (M.D. Pa. June 22, 2015) (finding the court lacked jurisdiction to consider the agency's "interpretation and application of law" and dismissing complaint pursuant to section 1252(a)(2)(B)(ii)); *Bremer v. Johnson*, No. 13-cv-1226, 2014 WL 7238064 (W.D. Mo. Dec. 17, 2014) (finding that legal and constitutional claims must be raised in a court of appeals and dismissing complaint); *Bains v. United States*, No. 1:13-cv-1014, 2014 WL 3389117 (N.D. Ohio July 9, 2014) (finding that Congress unambiguously intended to divest courts of jurisdiction in section 1154 and dismissing complaint); *Beeman v. Napolitano*, No. 10-cv-803, 2011 WL 1897931 (D. Or. May 17, 2011) (granting dismissal for lack of jurisdiction under section 1252).

Two recent cases on AWA-based visa petition denials have held that district courts are not precluded from evaluating constitutional and procedural challenges. *See Burbank v. Johnson*, No. 2:14-cv-292-RMP, 2015 WL 4591643 (E.D. Wash. July 29, 2015) (reviewing plaintiff's

constitutional and procedural arguments, but dismissing for failure to state a plausible claim for relief); *Bakran v. Johnson*, No. 15-cv-127, 2015 WL 3631746 (E.D. Pa. June 11, 2015) (finding the court had jurisdiction to consider plaintiff's claims and denying defendant's motion to dismiss). These courts "concluded that these claims were not barred by the jurisdiction-stripping provision because they did not challenge the USCIS' no-risk determination." *Burbank*, No. 2:14-CV-292-RMP, 2015 WL 4591643, at *3.

The *Burbank* court stated that there is a "strong presumption that Congress intends judicial review of administrative action" that could be overcome "if there is 'clear and convincing evidence of a contrary congressional intent,' ... or 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.' " No. 2:14-CV-292-RMP, 2015 WL 4591643, at *2 (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988); *Helgeson v. Bureau of Indian Affairs, Dep't of Interior*, 153 F.3d 1000, 1003 (9th Cir.1998)). Additionally, the *Burbank* court relied on *McNary v. Haitian Refugee Center*, 498 U.S. 479 (1991), to support the presumption that favors interpretation of statutes to allow for judicial review of administrative action. *See id*. at *4. This interpretation of *McNary* differed from that offered by the court in *Bremer*, which determined that review was barred by the broad and general language in section 1252(a)(2)(B)(ii). *See* No. 13-cv-1226, 2014 WL 7238064, at *4.[5]

This Court is not bound by any of the previous cases addressing the specific issue of AWA-based visa petition denial. Weighing the legal arguments, it seems that the *Burbank* court's interpretation, based off the holding in *Bakran*, is most persuasive. Accordingly, the

---

[5] Section 1252 states in relevant part that no court shall have jurisdiction to review "*any other decision or action* of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

Court will review Plaintiffs' arguments that are not delegated to "the Secretary's sole and unreviewable discretion." *See* 8 U.S.C. § 1154(a)(1)(A)(viii).

### B. Whether Suhail's 2005 Conviction Qualifies as a "Specified Offense Against a Minor"

Plaintiffs first argue that Suhail has not been convicted of a "specified offense against a minor," and thus the immigration provisions of the AWA should not apply to him. See Dkt. No. 1, p. 23 (Pg. ID No. 23). They break this argument into two parts. First, Plaintiffs argue that "USCIS improperly placed the burden on the Plaintiffs to demonstrate that Mr. Suhail's conviction is not a 'specified offense against a minor' as defined in the Adam Walsh Act." *Id*. at 26–27, ¶ 44 (Pg. ID No. 26–27). Second, Plaintiffs assert that under the categorical approach, which they believe the Court should apply, Suhail's conviction does not qualify as a "specified offense against a minor." *See id*. at 39–40, ¶ 58 (Pg. ID No. 39–40).

Defendants, in turn, respond that "Plaintiffs' challenges fail to state valid claims as a matter of law because USCIS' determinations do not contravene well-established APA standards." Dkt. No. 12, pp. 11–12 (Pg. ID No. 121–22). Section 706 of the Administrative Procedures Act (APA) permits a reviewing court to hold an agency's action, findings, and conclusions as unlawful where they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "in excess of statutory jurisdiction," 5 U.S.C. § 706(2). In doing so, the court should apply the principles of *Chevron* deference. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative

interpretations."). "Judicial deference to the Executive Branch is especially appropriate in the immigration context." *Aguirre-Aguirre*, 526 U.S. at 416.

Under *Chevron*, the initial question is whether the "the statute is silent or ambiguous with respect to the specific issue" before it. 467 U.S. at 843. If "Congress has directly spoken to the precise question at issue," then the agency must follow their explicit language. *Id*. at 842. In the case of ambiguity, so long as " 'the agency's answer is based on a permissible construction of the statute,' that is the end of the matter." *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1874–75 (2013) (quoting *Chevron*, 467 U.S. at 842). A court may not substitute its own interpretation in place of an agency's reasonable interpretation where there has been an implicit legislative delegation. *See Chevron*, 467 U.S. at 844 (1984).

### i. Whether USCIS Properly Placed the Burden on Suhail to Demonstrate His Conviction Was Not a "Specified Offense Against a Minor"

Plaintiffs first allege that the Department of Homeland Security (DHS) "must demonstrate by clear and convincing evidence that the Adam Walsh Act amendments apply to a U.S. citizen petitioner." Dkt. No. 1, p. 23 (Pg. ID No. 23). They claim that the AWA creates a ground of disqualification for otherwise eligible petitioners, and thus the agency must prove that a petitioner was convicted of a "specified offense against a minor.*" See id*. at 24–25, ¶ 41 (Pg. ID No. 24–25).

The INA does not specify the exact procedures that must be followed in order to determine whether a petitioner and alien beneficiary are eligible for "immediate relative" status. *See McLat v. Longo*, 412 F. Supp. 1021, 1025 (D.V.I. 1976). Instead, such authority is delegated to the Attorney General, who receives I-130 petitions. 8 U.S.C. § 1154(a)(1)(A)(i). The regulations state that an individual filing a visa petition has the burden of establishing eligibility. *See* 8 C.F.R. § 103.2(b)(1) (2015) ("An applicant or petitioner must establish that he or she is

eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication."). Although the I-130 application form does not inquire as to whether a petitioner had a criminal history, petitioners and alien beneficiaries undergo an administrative inspection. *See McLat*, 412 F. Supp. at 1027 ("administrative inspections are necessary for the proper identification of Form I-130 applicants and their spouse-beneficiaries"). Specifically, USCIS performs an Interagency Border Inspection System (IBIS) background check. *See* Interoffice Memorandum from Michael Aytes, *Guidance for Adjudication of Family–Based Petitions and I–129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006* ("Aytes Memo").

Title IV of the AWA, "Immigration Law Reforms to Prevent Sex Offenders from Abusing Children," amended the INA to limit eligibility of an individual convicted of a "specified offense against a minor"[6] from having a family-based visa petition approved. AWA, § 402(a)(2), 120 Stat. at 622. If the petitioner's IBIS check "reveals a hit for any offense that is or potentially may be a 'specified offense against a minor,' " then the USCIS office may issue a Request for Evidence[7] regarding police arrest records and court disposition documents. Aytes Memo at 3. USCIS may also schedule the petitioner for fingerprints. *Id*. If the fingerprint results or submitted evidence indicate that the petitioner was not convicted of a specified offense against a minor, then the petition's adjudication proceeds normally in accordance with 8 C.F.R. 204. *Id*. at 4. However, if the fingerprint results and evidence indicate that the petitioner was convicted of

---

[6] Congress indicated that "specified offense against a minor" was defined within the Sex Offender Registration and Notification Act (SORNA) provisions of the AWA. AWA, § 402(a)(2), 120 Stat. at 622; *see also* 42 U.S.C. § 16911(7).
[7] A Request for Evidence seeks evidence of an applicant's eligibility or ineligibility for the requested benefit. 8 C.F.R. 103.2(b)(8).

a specified offense against a minor, then the adjudicator moves on to the "no risk" determination.[8] *Id*. at 5.

Congress limited the approval of family-based petitions from petitioners convicted of a specified offense against a minor. *See* 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Petitions may only be approved if the DHS Secretary determines that the petitioner poses no risk to the beneficiary. *Id*. This determination is within the Secretary's "sole and unreviewable discretion." *See id*. Petitioners who have been convicted of a specified offense against a minor must submit evidence—either initially with their petition or in response to a Request for Evidence—and a legal argument that demonstrate that they pose no risk to the safety and well-being of the petitions' intended beneficiaries. Aytes Memo at 5.

When reviewing an "administrative implementation of a particular statutory provision," the Court defers to the agency's decision "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). Here, it is clear that Congress delegated the authority to the Attorney General to receive and approve family-based visa petitions. *See* 8 U.S.C. § 1154(a)(1)(A)(i). When drafting the AWA, Congress delegated authority to the Secretary of DHS to ensure that petitions submitted by someone convicted of a "specified offense against a minor" were only approved when there was a "no risk" showing. *See* 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

In sum, it appears that USCIS first bears the burden of determining whether an individual petitioner is ineligible to submit a family-based visa petition under the AWA amendments.

---

[8] If review of fingerprint results and evidence leads to uncertainty as to whether the petitioner was convicted of a specified offense against a minor, then the adjudicator forwards the file to USCIS's counsel for review. *Id*. at 4.

USCIS discovers whether a petitioner is ineligible by finding a qualifying conviction and evidence during the IBIS background check. Once it has been established that a petitioner was previously convicted of a "specified offense against a minor," the burden then shifts to the petitioner to "submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies)." Aytes Memo at 5.

Petitioners bear the burden of establishing eligibility. See 8 C.F.R. § 103.2(b)(1) (2015). Accordingly, it seems reasonable to require a petitioner to prove his or her eligibility to file a visa petition by requiring him or her to prove either that he or she was not convicted of a qualifying offense, or that he or she poses no risk to the beneficiary when the record of a petitioner's AWA-qualifying conviction questions eligibility. *See Matter of Introcaso*, 26 I. & N. Dec. 304, 307 (BIA 2014); *Naik v. Dir. U.S. Citizenship & Immigration Servs. Vermont*, 575 F. App'x 88, 92 (3d Cir. 2014) (stating that the issue of whether the petitioner bore the burden of demonstrating that he has not been convicted of a "specified offense" was conclusively resolved by the BIA's precedential opinion in *Introcaso)*.

USCIS' interpretation filled the gap left by Congress, and the Court does not find it to be "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *See Mead*, 533 U.S. at 227.

### ii. Whether USCIS Should Have Utilized a Categorical Approach to Determine If Suhail's Conviction Was a "Specified Offense Against a Minor"

Plaintiffs next assert that the Court should use a categorical approach to determine what qualifies as a "specified offense against a minor," and that under this approach, Suhail's conviction does not qualify because the age of his victim was not an essential element of the offense. *See* Dkt. No. 1, pp. 37–38, ¶ 56 (Pg. ID No. 37–38).

Congress explicitly spoke to the broad scope of sex offenses against minors that they intended to be covered under the AWA:

> (7) *Expansion of definition of "specified offense against a minor" to include all offenses by child predators*
>
> The term "specified offense against a minor" means an offense against a minor that involves any of the following:
>
> (A) An offense (unless committed by a parent or guardian) involving kidnapping.
> (B) An offense (unless committed by a parent or guardian) involving false imprisonment.
> (C) Solicitation to engage in sexual conduct.
> (D) Use in a sexual performance.
> (E) Solicitation to practice prostitution.
> (F) Video voyeurism as described in section 1801 of Title 18.
> (G) Possession, production, or distribution of child pornography.
> (H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
> (I) Any conduct that by its nature is a sex offense against a minor.

42 U.S.C. § 16911(7) (emphasis added). In the denial of Suhail's petition, the agency stated that "[t]he statutory list of criminal activity in the Adam Walsh Act that may be considered a specified offense against a minor is stated broadly in order to accommodate variances among Federal, state, and foreign criminal laws." *See* Dkt. No. 1-2, p. 3 (Pg. ID No. 62). The Court finds that USCIS' interpretation of the statutory language is fully in line with its clear meaning.

Suhail was convicted of assault with the intent of committing criminal sexual penetration. *See* Dkt. No. 12-2, p. 8 (Page ID No. 145). The victim was a child under the age of 13. *See id*. Such an offense falls within the unambiguously broad scope of a "specified offense against a minor" under subsection (H) ("[c]riminal sexual conduct involving a minor") or the catch-all provision, subsection (I) ("[a]ny conduct that by its nature is a sex offense against a minor."). *See* 42 U.S.C. § 16911(7). As such, Plaintiffs' argument that a categorical approach should be used to exclude sex offenders with victims under the age of 18, so long as the fact that their victims

were minors was not an essential element of the offense, is contrary to Congress's intent and the explicit language of the statute. *See Chevron*, 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Courts reviewing the interpretation of "specified offense against a minor" in the context of SORNA requirements have uniformly held that a circumstance-specific approach should be utilized. *See, e.g,. United States v. Price*, 777 F.3d 700, 709 (4th Cir.) *cert. denied*, 135 S. Ct. 2911 (2015) (finding that "assault and battery of a high and aggravated nature" against a twelve year old qualified as a "specified offense against a minor" and because "Congress's use of broader language in defining a 'sex offense' for victims who are minors makes clear its intention that the circumstance-specific approach should apply."); *United States v. Gonzalez-Medina*, 757 F.3d 425, 431 (5th Cir. 2014) *cert. denied*, 135 S. Ct. 1529 (2015) (holding that "having sexual intercourse with a child age sixteen or older" was a "specified offense against a minor" because application of a categorical approach would frustrate SORNA's broad purpose); *United States v. Mi Kyung Byun*, 539 F.3d 982 (9th Cir. 2008) (holding that "importation into the United States of any alien for the purpose of prostitution" was a "specified offense against a minor" where the alien was seventeen years old); *United States v. Dodge*, 597 F.3d 1347, 1354 (11th Cir. 2010) (concluding that the defendant's underlying conduct—not just elements of the conviction statute—should be evaluated in determining what constitutes a "specified offense against a minor"). "Given all [the] textual clues, and even though use of the word 'convicted' at the outset with regard to 'sex offender[s]' creates a modicum of ambiguity, the best reading of the statutory structure and language is that Congress contemplated a non-categorical approach as to the age of the victim in determining whether a particular conviction is for a 'specified offense against a

minor.' " *Mi Kyung Byun*, 539 F.3d at 992; *see also Gonzalez-Medina*, 757 F.3d at 430 ("the use of the term 'convicted' is not determinative").

Defendants' interpretation of "specified offense against a minor" to allow circumstance-specific inquiry into the age of the victim and conduct underlying the offense is both reasonable and in line with Congress's statement that the term should "include *all* offenses by child predators." *See* 42 U.S.C. § 16911(7) (emphasis added)*; Matter of Introcaso*, 26 I. & N. Dec. 304 (BIA 2014). For this Court to interpret the same section differently would create a puzzling inconsistency with appellate precedent and, as mentioned above, a departure from the clearly stated legislative intent. Accordingly, this claim is dismissed with prejudice.

### C. Whether Application of the AWA Amendments Is Impermissibly Retroactive

Plaintiffs contend that since Suhail's conviction occurred in 2005, prior to the AWA's enactment on July 27, 2006, the agency's denial of his petition based on the AWA violates the presumption against retroactive legislation. *See* Dkt. No. 1, p. 40, ¶ 59 (Pg. ID No. 40). Plaintiffs cite to *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994), which states that "the presumption against retroactive legislation is deeply rooted in our jurisprudence."

Additionally, Plaintiffs argue that the AWA amendments to the INA are "undoubtedly punitive, designed to further punish a U.S. citizen convicted of certain offenses by preventing him or her from petitioning for a spouse to reside as a lawful permanent resident in the United States."[9] Dkt. No. 1, p. 45, ¶ 64 (Pg. ID No. 45). To establish whether legislation is penal, a court must determine "whether the legislature meant the statute to establish 'civil' proceedings."

---

[9] Similar concerns were voiced on the floor of the Senate prior to the bill passing by a majority vote. *See* 152 CONG. REC. S8028 (daily ed. July 20, 2006) (statement of Sen. Leahy) ("This provision casts a wide net, and in many cases will harshly and unnecessarily penalize people seeking entry to the United States who have a family member in the country, but where the citizen or resident poses no threat to the individual seeking entry.").

*Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). Because courts defer to the legislature's stated intent, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

Several other cases considering similar issues to those raised in the present case rely on convictions occurring prior to the enactment of the AWA. *See Burbank*, No. 2:14-cv-292-RMP, 2015 WL 4591643 (denying a visa petition based on a 1997 conviction); *Bakran*, No. 15-cv-127, 2015 WL 3631746 (denying a visa petition based on a 2004 conviction); *Bremer*, No. 13-cv-1226, 2014 WL 7238064 (denying a visa petition based on a 2001 conviction).

In *Burbank*, the court considered the issue of retroactivity and violation of the ex post facto clause. The court found that "the relevant provision of the Adam Walsh Act is a civil matter rather than a criminal penalty." No. 2:14-CV-292-RMP, 2015 WL 4591643, at *6. Relying on *Smith*, the same case Plaintiffs cite to in their Complaint, the court found that the AWA amendment to the INA was not penal. *See id*. Additionally, the *Burbank* court also distinguished the AWA from the statute at issue in *Vartelas*, another case upon which Plaintiffs rely. In *Vartelas*, the Supreme Court distinguished the improper retroactive application of the immigration law at issue from statutes that "address dangers that arise postenactment: sex offenders with a history of child molestation working in close proximity to children, and mentally unstable persons purchasing guns." *Vartelas v. Holder*, 132 S. Ct. 1479, 1489 n.7 (2012). The *Burbank* court stated that "the [AWA] protects aliens from convicted sex offenders and provides a means for the Secretary to override that protection when appropriate." No. 2:14-CV-292-RMP, 2015 WL 4591643, at *7.

Congress clearly and explicitly stated the purpose of the AWA was "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory, of Adam Walsh and other child crime victims." Public Law 109–248, 120 Stat. 587, *available at* http://www.gpo.gov/fdsys/pkg/PLAW-109publ248/pdf/PLAW-109publ248.pdf. Although Title IV of the AWA states no explicit purpose, the title itself reads, "Immigration Law Reforms to Prevent Sex Offenders from Abusing Children." *See id*. at 622. Accordingly, the Court finds that the application of the AWA to Suhail is not a penalty, but rather a civil matter to prevent future additional sex offenses against children, complete with a means by which the Secretary may override that protection. Plaintiffs have not stated a plausible claim that the law contravenes the anti-retroactivity principle. This claim is dismissed with prejudice.

### D. Whether USCIS' Implementation of the AWA Amendments to the INA Was *Ultra Vires* to the Statute

Plaintiffs next contend that USCIS acted *ultra vires* by (1) applying the AWA amendments to Bilal, as an adult petition beneficiary and (2) by applying the "beyond any reasonable doubt" standard in evaluating potential risk to the beneficiary. *See* Dkt. No. 1, pp. 48–50, ¶¶ 66–67 (Pg. ID No. 48–50).

#### i. The Court Does Not Have Jurisdiction To Review USCIS' "No Risk" Determination As Applied To Suhail And His Adult Beneficiary

Plaintiffs assert that "USCIS surpassed its statutory authority when it applied the INA's Adam Walsh Act amendments to Plaintiffs' case because the sole beneficiary of Mr. Suhail's petition is his adult wife." Dkt. No. 1, pp. 48–49, ¶ 66 (Pg. ID No. 66). In *Bittinger*, where the plaintiff made a similar claim, the district court determined that it did not have the authority to reinterpret USCIS' application of the statute to the individual plaintiff. No. 1:14-CV-1560, 2015

WL 3842649, at *3; *see also Beeman*, No. 10–803, 2011 WL 1897931, at *3 (finding that the district court did not have jurisdiction over the plaintiff's claims "that the USCIS interpretation of the Adam Walsh Act to apply to adult beneficiaries exceeds its statutory authority").

As mentioned previously, the Court may only review Plaintiffs' arguments that are not delegated to "the Secretary's sole and unreviewable discretion." *See* 8 U.S.C. § 1154(a)(1)(A)(viii). Since the determination of whether Suhail poses a risk to his petition's beneficiary has unambiguously been delegated to the sole determination of the Secretary of DHS, the Court does not have jurisdiction to review this claim. *See id*.

### ii. Whether USCIS' Implementation of the AWA Amendments to the INA Was *Ultra Vires* to the Statute

Plaintiffs next claim that since the AWA is silent as to the legal standard of proof to be used in assessing a petitioner's risk to his or her beneficiary, USCIS' use of the "beyond any reasonable doubt" standard exceeded the agency's authority. *See* Dkt. No. 1, p. 50, ¶ 68 (Pg. ID No. 50).

This claim requires that the Court again engage in the two-step *Chevron* procedure. Since Congress did not speak directly to the standard of proof to be used in determining whether "the citizen poses no risk to the alien," the Court must determine whether the agency's regulation was based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 842–43; 8 U.S.C. § 1154(a) (1)(A) (viii). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id*., 467 U.S. at 843, n.11. In line with the "considerable weight" to be accorded to an agency's construction under *Chevron*, the Court finds that USCIS' "beyond any reasonable doubt" standard is a permissible construction of the statute.

-18-

"Congress denominated no specific standard of proof, but the Adam Walsh Act's instruction that a family-based visa petition should be allowed in such circumstances *only* where the citizen poses *no-risk*, and the delegation of that judgment to the 'sole and unreviewable discretion' of agencies, supports the USCIS' understanding that the factual showing should be high." *Burbank*, No. 2:14-CV-292-RMP, 2015 WL 4591643, at *9 (emphasis added); *see also Matter of Aceijas–Quiroz*, 26 I. & N. Dec. 294, 300 (2014) (interpreting "Congress' allocation of responsibility for the 'no risk' determination to the DHS as an allocation of sole authority ... to construct the legal framework within which such discretionary determinations are to be made, including the appropriate standard of proof").

Thus, the Court finds that Plaintiffs failed to raise a facially plausible claim that USCIS acted *ultra vires* of the authority granted by the AWA.

### E. Whether Application of the AWA Amendments Unconstitutionally Interferes in Plaintiffs' Interest in Marriage

Plaintiffs rely on the recent Supreme Court case of *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), to support their claim that the AWA "unreasonably restricts Plaintiffs' marital rights and their constitutionally protected liberty interest in 'establish[ing] a home' in the United States." Dkt. No. 15, pp. 33–34 (Pg. ID No. 261–62). However, Plaintiffs also correctly note that "U.S. citizens do not have a protected liberty interest in residing in the United States with their noncitizen spouses." *See id.* at 33 (Pg. ID No. 261) (citing *Kerry v. Din*, 135 S. Ct. 2128 (2015)). *Din* explicitly states that the "long practice of regulating spousal immigration" precludes the claim that denial of a spouse's visa application constitutes deprivation of a fundamental liberty interest. 135 S. Ct. at 2135. This holding is in line with Sixth Circuit precedent. *See Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) ("A denial of an immediate relative visa does not infringe upon their right to marry."); *Almario v. Attorney Gen.*, 872 F.2d 147, 151 (6th Cir. 1989)

("[T]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country.").

The AWA has not prevented Plaintiffs from exercising their right to marry—Plaintiffs are already married. *See* Dkt. No. 1, p. 16, ¶ 22. Furthermore, as the case law consistently states, Suhail does not have a constitutionally protected right to have his alien spouse, Bilal, remain in the United States. Therefore, Plaintiffs have not stated a plausible claim that the denial of the I-130 petition violates the constitutionally protected right to marriage. This claim is properly dismissed with prejudice under 12(b)(6) of the Federal Rules of Civil Procedure.

### IV. CONCLUSION

In conclusion, the Court finds that Plaintiffs' Complaint demonstrates that Suhail committed a sex offense against a minor that could properly subject him to the immigration restrictions put in place by the AWA. Plaintiffs failed to state a claim upon which relief may be granted. Accordingly, for the reasons discussed in detail above, the Court **GRANTS** the Government's Motion to Dismiss [12]. **IT IS HEREBY ORDERED** that the Complaint [1] is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Dated: November 12, 2015

                                         s/Gershwin A. Drain
                                         HON. GERSHWIN A. DRAIN
                                         United States District Court Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record l on November 12, 2015. Service was done electronically and by U S Postal Mail as required.

                                         s/Teresa A. McGovern
                                         Case Manager Generalist